1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHARLENE ANN PADLO,                    No.  2:15-cv-1953 AC

12                  Plaintiff,

13          v.                              ORDER

14   NANCY A. BERRYHILL, Acting
     Commissioner of Social Security,[1]
15

16                  Defendant.

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying her application for disability insurance benefits ("DIB") under

20   Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income

21   ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[2]

22   _____

23   [1]  On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social
     Security Administration.  See https://www.ssa.gov/agency/commissioner.html (last visited by the
     court on February 22, 2017).  She is therefore substituted as the defendant in this action.  See 42
24   U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the
     person holding the Office of the Commissioner shall, in his official capacity, be the proper
25   defendant").
     [2]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
26   who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New
     York, 476 U.S. 467, 470 (1986).  SSI is paid to financially needy disabled persons.  42 U.S.C.
27   § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of
     Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 et seq., is the Supplemental
28   (continued…)

                                                  1

1    For the reasons that follow, the court will deny plaintiff's motion for summary judgment,

2    and grant the Commissioner's cross-motion for summary judgment.

3                          I.    PROCEDURAL BACKGROUND

4    Plaintiff applied for disability insurance benefits on December 1, 2011, and for

5    supplemental security income on December 13, 2011.  Administrative Record ("AR") 15.[3]  The

6    disability onset date for both applications was alleged to be June 18, 2008.  AR 15.  The

7    applications were disapproved initially and on reconsideration.  AR 15.  On February 10, 2014,

8    Administrative Law Judge ("ALJ") Jeffrey A. Hatfield presided over the hearing on plaintiff's

9    challenge to the disapprovals.  AR 104-51 (transcript).  Plaintiff, who was present and testified at

10   the hearing, was represented by Lorie DeCristo, Esq., at the hearing.  AR 104.  Also testifying

11   were Jane Hale, Vocational Expert ("VE"), and Dr. Allan D. Levine (by telephone), Medical

12   Expert.

13   On March 22, 2014, the ALJ issued a partially unfavorable decision, finding plaintiff

14   "disabled" from June 18, 2008 through October 24, 2009, but not thereafter, under Sections

15   216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of

16   Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 15-99 (decision), 100-03 (exhibit list).  On

17   July 17, 2015, after receiving counsel's brief as an additional exhibit, the Appeals Council denied

18   plaintiff's request for review, leaving the ALJ's decision as the final decision of the

19   Commissioner of Social Security.  AR 1-5 (decision, additional exhibit and order).

20   Plaintiff filed this action on September 15, 2015.  ECF No. 1; see 42 U.S.C. §§ 405(g),

21   1383c(3).  The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 7, 8.  The

22   parties' cross-motions for summary judgment, based upon the Administrative Record filed by the

23   Commissioner, have been fully briefed.  ECF Nos. 16 (plaintiff's summary judgment motion), 19

24   (Commissioner's summary judgment motion).

25

26   Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including
     children, whose income and assets fall below specified levels . . .").

27   [3]  The AR is electronically filed at ECF Nos. 11-1 to 11-12 (AR 1 to AR 859).  The paper version
     is lodged with the Clerk of the Court.  ECF No. 11.

28

                                            2

## II.     FACTUAL BACKGROUND

Plaintiff was born on July 25, 1965, and accordingly was 43 years old on the alleged disability onset date, making plaintiff a "younger person" under the regulations.  AR 27, 108; see 20 C.F.R §§ 404.1563(c) ("Younger person"), 416.963(c) (same).  Plaintiff has a high school education, and can communicate in English.  AR 27.

## III.     LEGAL STANDARDS

"[A] federal court's review of Social Security determinations is quite limited."  Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015).  The Commissioner's decision that a claimant is not disabled will be upheld "unless it contains legal error or is not supported by substantial evidence."  Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

"'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion."  Garrison, 759 F.3d at 1009.  "While inferences from the record can constitute substantial evidence, only those reasonably drawn from the record will suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation and internal quotation marks omitted).

The court reviews the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Rounds v. Commissioner Social Security Admin., 807 F.3d 996, 1002 (9th Cir. 2015); Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016) ("[w]e cannot affirm … "simply by isolating a specific quantum of supporting evidence").

It is the ALJ's responsibility "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."  Brown-Hunter, 806 F.3d at 492 (internal quotation marks omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  Thus, in reviewing the Commissioner's decision, this court does not substitute its discretion for that of the Commissioner.  See Brown-Hunter, 806 F.3d

1   at 492 ("[f]or highly fact-intensive individualized determinations like a claimant's entitlement to

2   disability benefits, Congress places a premium upon agency expertise, and, for the sake of

3   uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their

4   discretion for that of the agency") (internal quotation marks omitted).

5       The court may review "only the reasons provided by the ALJ in the disability

6   determination and may not affirm the ALJ on a ground upon which he did not rely." Garrison,

7   759 F.3d at 1010. Finally, the court will not reverse the Commissioner's decision if it is based on

8   "harmless error," meaning that the error "is inconsequential to the ultimate nondisability

9   determination …." Brown-Hunter, 806 F.3d at 492 (internal quotation marks omitted).

10                  IV.     RELEVANT LAW

11       Disability Insurance Benefits and Supplemental Security Income are available for every

12   eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI). Plaintiff is

13   "disabled" if she is "'unable to engage in substantial gainful activity due to a medically

14   determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987)

15   (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

16       The Commissioner uses a five-step sequential evaluation process to determine whether an

17   applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);

18   Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation

19   process to determine disability" under Title II and Title XVI).[4] The following summarizes the

20   sequential evaluation:

21              Step one: Is the claimant engaging in substantial gainful activity? If
so, the claimant is not disabled. If not, proceed to step two.

22

23   20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

24             _____

25   [4] Plaintiff's Title II claim is for "Medicare Hospital Insurance Benefits for a Medicare Qualified
Government Employee." AR 15; see 42 U.S.C. § 426(b). To qualify under the relevant

26   provision, plaintiff must show that she qualifies for disability insurance benefits. 42 U.S.C.
§ 426(b)(2)(A)(i). Accordingly, the ALJ applied the familiar five-step sequential evaluation for

27   determining disability. While there are other requirements that apply for this type of benefit,
none of them are issues on this appeal.

28

Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy."  Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.    THE ALJ's DECISION

Plaintiff challenges only the ALJ's findings at Step 5 of the sequential evaluation, for the period after October 25, 2009.  In that regard, the ALJ found:

16. Medical improvement occurred as of October 25, 2009, the date the claimant's disability ended (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

17. The medical improvement that has occurred is related to the ability to work because there has been an increase in the claimant's residual functional capacity (20 CFR 404.1594(b)(4)(i) and 416.994(b)(l)(iv)(A)).

18. [Residual Functional Capacity] After careful consideration of the entire record, the undersigned finds that, as of October 25, 2009, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)

1   further restricted by the following limitations: lift and/or carry 10
2   pounds frequently and 20 pounds occasionally; stand and/or walk
    for a total of 2 hours in an 8-hour workday; sit for a total of 6 hours
3   in an 8-hour workday; stand/walk for a total of 2 hours in an 8-hour
    workday; frequently climb ramps/stairs, balance; occasionally
4   stoop, kneel, crouch, crawl; never climb ladders/rope/scaffolds;
    never reach overhead with bilateral upper extremities; avoid
5   concentrated exposure to machinery and unprotected heights;
    limited to simple, routine, repetitive tasks; limited to only
6   occasional changes in the work setting; and limited to frequent
    interaction with the public and co-workers.

7   19. The claimant is still unable to perform past relevant work (20
    CFR 404.1565 and 416.965).
8
9   20. The claimant's age category has not changed since October 25,
    2009 (20 CFR 404.1563 and 416.963).

10   21. The claimant's education level has not changed (20 CFR
    404.1564 and 416.964).
11
12   22. Beginning October 25, 2009, transferability of job skills is not
    material to the determination of disability because using the
13   Medical-Vocational Rules as a framework supports a finding that
    the claimant is "not disabled," whether or not the claimant has
14   transferable job skills (See SSR 82-41 and 20 CFR Part 404,
    Subpart P, Appendix 2).

15   23.   [Step 5] Beginning   October   25,   2009,   considering   the
    claimant's age, education, work experience, and residual functional
16   capacity, there have been jobs that exist in significant numbers in
    the national economy that the claimant can perform (20 CFR
17   404.1560(c), 404.1566, 416.960(c) and 416.966).

18   24. The claimant's disability ended October 25, 2009 (20 CFR
    404.1594(f)(8) and 416.994(b)(5)(vii)).
19

20   AR 15-37.

21                              VI.   ANALYSIS

22          Plaintiff contends that the ALJ committed reversible error because, she argues, the ALJ's

23   residual functional capacity precludes her from performing the alternative work identified at

24   Step 5.  Specifically, the identified jobs all require frequent "reaching,"[5] even though the residual

25   functional capacity ("RFC")[6] states that plaintiff should "never reach overhead with bilateral

26   _____

27   [5]  Film inspector (DOT #726.684-050), table worker (DOT #739.687-182), and touch up
    inspector (DOT #726.684-110).  AR 36.
    [6]  RFC is "the most that a claimant can do despite 'physical and mental limitations' caused by his
28   (continued…)

                                            6

1   upper extremities."  AR 30.  Plaintiff argues that "reaching" includes "overhead reaching," and

2   therefore there is a conflict between the RFC and the requirements for the alternative jobs

3   plaintiff can supposedly perform.

4       A.  Issue Exhaustion

5       The ALJ's RFC states that plaintiff can "never reach overhead with bilateral upper

6   extremities."  AR 30.  At Step 5, however, the ALJ accepted the VE's testimony that plaintiff

7   could perform three alternative jobs, each of which involve frequent "reaching."  On appeal,

8   plaintiff argues that the RFC precludes the jobs identified at Step 5 because "reaching" includes

9   "overhead reaching."  However, plaintiff, who was represented by counsel, did not question the

10  VE about this asserted conflict.  Moreover, plaintiff did not mention this issue on her appeal to

11  the Appeals Council.

12      Defendant argues that this "failure to raise the issue during the administrative proceedings,

13  when it could have been addressed, is fatal to Plaintiff's claim."  ECF No. 19 at 7, citing Meanel

14  v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999).  In Meanel, plaintiff failed to raise an issue before

15  the ALJ, and failed to raise it before the Appeals Council.  The Ninth Circuit held that, "at least

16  when claimants are represented by counsel, they must raise all issues and evidence at their

17  administrative hearings in order to preserve them on appeal."  Meanel, 172 F.3d at 1115.  It

18  further stated that it would "only excuse a failure to comply with this rule when necessary to

19  avoid a manifest injustice …."  Id.

20          1.  The hearing

21      Here, a manifest injustice would arise from precluding plaintiff from raising the issue in

22  this court.  Defendant argues that after the VE had identified the alternative jobs, plaintiff's

23  counsel "asked not a single question concerning the reaching requirements of the jobs identified

24  …."  ECF No. 19 at 7.  However, there was no reason for plaintiff's counsel to suspect that there

25  might be a conflict.  The two hypotheticals the ALJ put to the VE specifically included the

26  restrictions "[n]o reaching overhead," and "any lifting should not be above shoulder level."

27  _____

28  impairments and related symptoms.'"  Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015).

AR 143, 145.  When the VE then testified that plaintiff could still perform the three jobs she

identified, plaintiff's counsel had no reason to suspect that those jobs in fact involved overhead

reaching.  There is nothing in the record to indicate that plaintiff knew in advance that the VE

would pluck those three jobs out of the Dictionary of Occupational Titles ("DOT"),[7] and therefore

counsel had no advance opportunity to study the jobs for possible inconsistencies with the ALJ's

hypotheticals.[8]  It would work an injustice on plaintiff to preclude her from arguing the asserted

conflict here, when she had no reasonable basis for thinking that there was a conflict at the time

of the hearing.

2.    The Appeals Council

Plaintiff failed to raise this issue before the Appeals Council.  However, to the degree that

Meanel holds that failure to raise an issue before the Appeals Council bars a party from raising it

on appeal to the district court, the holding was seriously called into doubt by Sims v. Apfel, 530

U.S. 103 (2000).  In Meanel, the Ninth Circuit held that this bar applied so long as the party was

represented by counsel in the administrative proceeding, and no manifest injustice would result.

However, in Sims, "the Supreme Court indicated that judicially created issue exhaustion is not

always appropriate."  Alaska Survival v. Surface Transp. Bd., 705 F.3d 1073, 1080 (9th Cir.

2013).  It further held that the reasons for imposing issue exhaustion on some administrative

[7]  The Commissioner uses the DOT to determine which jobs exist in significant numbers in the national economy.  See 20 C.F.R. § 404.1566(d)(1); Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) ("[i]n making disability determinations, the Social Security Administration relies primarily on the Dictionary of Occupational Titles for information about the requirements of work in the national economy") (internal quotation marks omitted).

[8]  It is not reasonable to believe that the ALJ – who works under a very heavy case load – would calmly sit by waiting for plaintiff's counsel ( having just heard for the first time what the alternative jobs were) to retrieve the DOT, find each of the three identified jobs, and then check each of them for each of the limitations set forth in the ALJ's hypothetical, namely: age; education; lifting capacity; standing/walking ability; sitting capacity; ability to use stairs, ladders, ropes and scaffolds; ability to balance, stoop, kneel, crouch, crawl and walk on uneven terrain; inability to reach overhead; inability to tolerate hazardous machinery and unprotected heights; complexity of tasks; changes in work settings; and contact with public and with co-workers.  See Assn. of Admin. Law Judges v. Colvin, 777 F.3d 402, 403 (7th Cir. 2015) ("[i]n October 2007 the Social Security Administration's chief administrative law judge issued a directive setting as a 'goal' for the administrative law judges that each one "manage their docket in such a way that they will be able to issue 500-700 legally sufficient decisions each year'").

8

1    proceedings did not apply to social security disability determinations, as they are non-adversarial

2    proceedings, and no statute or regulation requires issue exhaustion.  Sims, 530 U.S. at 105-10.

3           The Court was not able resolve the question of whether issue exhaustion should apply,

4    with only a Plurality holding that "judicially created issue-exhaustion requirement is

5    inappropriate" in the social security context.  See Sims, 530 U.S. at 112 (Opinion of Thomas, J.).[9]

6    However, the Ninth Circuit, post-Sims, treats the Meanel decision as a dead letter, at least as it

7    regards failure to raise issues before the Appeals Council.  See Edlund v. Massanari, 253 F.3d

8    1152, 1160 n.9 (9th Cir. 2001) ("[T[he Commissioner argues that Edlund waived this claim for

9    failure to raise it with the Appeals Council and in the district court.  The SSA's argument *with*

10    *respect to the Appeals Council* is foreclosed by the recent holding in Sims v. Apfel …")

11    (emphasis added).  Following Edlund, the undersigned declines to follow Meanel here, and

12    therefore turns to plaintiff's assignment of error.

13           B.  The RFC and the Alternative Jobs

14           It is undisputed that all three jobs identified by the VE require frequent "reaching."

15    Plaintiff argues that "reaching" necessarily includes "overhead reaching," and therefore plaintiff

16    cannot perform any of those jobs.

17           Specifically, plaintiff argues that "[t]he DOT describes the three identified alternative

18    occupations as requiring constant … or frequent use … of both upper extremities to reach

19    *overhead*."  ECF No. 16 at 6 (emphasis added).  That is not correct.  The DOT requires

20    "reaching," but makes no reference to "overhead" reaching.  See ECF No. 16-1 (Reprint of DOT)

21    at 3, 7, 11.

22           Plaintiff next turns to the Revised Handbook for Analyzing Jobs, which she describes as

23    documenting the methodology "used to create the job descriptions in the DOT."  ECF No. 16

24

25   [9]  Justice O'Connor, concurring, agreed that "[i]n the absence of a specific statute or regulation requiring issue exhaustion, … such a rule is not always appropriate."  Sims, 530 U.S. at 113

26   (O'Connor, J., concurring).  However, the reason she declined to apply issue preclusion in that case was because "the regulations provide no notice that claimants must … raise specific issues

27   before the Appeals Council to reserve them for review in federal court," and that indeed, plaintiff "did everything that the agency asked of her."  Id.

28

at 6.[10]  In the Revised Handbook, plaintiff asserts, "reaching is described as 'extending hand(s) and arm(s) in any direction' to lift up or bring down."  ECF No. 16 at 6.  However, there is nothing in this document that equates "reaching" with reaching "overhead."  To the contrary, the document includes reaching for a pencil as an example of what is meant by "reaching."  See ECF No. 16-2 at 12 ¶ 8(R:1) ("Reaches for ledgers, tax tables, and *writing instruments*") (emphasis added).[11]

Plaintiff next turns to Social Security Ruling 85-15, to argue that "the definition of reaching is 'extending the hands and arms in any direction ....'"  Plaintiff misconstrues the language of this Ruling.  The point of the Ruling is not to define what is meant by "reaching" – which could naturally refer to extending the hands and arms in any direction – but rather, to ensure that if a reaching limitation is at issue, "the assistance of a VS [vocational specialist] may be needed to determine the effects of the limitations."  Social Security Rulings ("SSR") 85-15. That is precisely what the ALJ did in this case.  While DOT jobs calling for "reaching" could include jobs that call for overhead reaching, the VE here was asked to *eliminate* those jobs from her consideration, as the ALJ's hypotheticals called for "[n]o reaching *overhead*," and "any lifting should not be above shoulder level."  AR 143, 145 (emphasis added).  Plaintiff has done nothing to show that the VE failed to do what was asked of her.

Plaintiff's cases do not support her argument.  Plaintiff cites cases in which the ALJ failed to ask the VE if there was a conflict between the VE's testimony and the DOT, even though doing so is required by SSR 00-04.[12]  See Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) ("the ALJ did not ask the vocational expert whether her testimony conflicted with the Dictionary

---

[10]  The defendant does not dispute this point.

[11]  Even the one example given that might bring overhead reaching to mind – "Reaches for high branches to pick fruit" – does not necessarily involve overhead reaching, and in any event, has nothing to do with the three jobs identified by the VE.  See ECF No. 16-2 at 12 ¶ 8(R:5).

[12]  Policy Interpretation Rul. : Titles II and Xvi: Use of Vocational Expert and Vocational Specialist Evid., and Other Reliable Occupational Info. in Disability Decisions, SSR 00-4P (Dec. 4, 2000) ("[w]hen a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT").

of Occupational Titles"); Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006) ("[t]he ALJ here took testimony from an expert as to whether certain job requirements were compatible with Prochaska's various limitations, but did not ask whether the expert's analysis conflicted with the DOT").  Here, the ALJ asked the VE if her testimony was "consistent with the definitions in the Dictionary of Occupational Titles," and the VE confirmed that it was.  AR 146.  The ALJ went further, and asked if the VE's testimony needed to be modified at all by her own experience. AR 146.  The VE confirmed that no modifications were needed.  AR 146.

All plaintiff is left with, then, is an unsupported assertion that the VE did not do what the ALJ asked her to do.  Even assuming that the entire set of DOT jobs that call for "reaching" includes jobs requiring "overhead" reaching, the VE was asked to eliminate all jobs that included overhead lifting and to then determine whether plaintiff could perform the remainder.  The VE concluded that the three jobs she identified were consistent with the specified restrictions.  This is plainly substantial evidence on which the ALJ could, and did, base his decision.  See Hill, 698 F.3d at 1161 ("[t]he ALJ may meet his burden at step five by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the claimant's limitations, both physical and mental, supported by the record").[13]

## VII.   CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 19), is GRANTED; and

////

////

[13]  At a bare minimum, it is a rational interpretation of the VE's testimony that she eliminated all the DOT jobs that specifically required overhead lifting, since that is what the ALJ asked her to do.  The court therefore upholds the ALJ's conclusion.  See Thomas, 278 F.3d at 954 ("[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld").

3.  The Clerk of the Court shall enter judgment for defendant, and close this case.

DATED: February 23, 2017

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE